IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE L. B. VINSON, #121632, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:13-CV-282-WHA |
| | ) | (WO) |
| | ) | |
| CYNTHIA DILLARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

### I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Willie L. B. Vinson ("Vinson"), an indigent state inmate. *Doc. No. 8*.  In the amended complaint, Vinson asserts that a generic statement contained in the letter notifying him of the denial of parole created a liberty interest in being released on parole. He also alleges that the defendants deprived him of due process when considering him for parole because they ignored the directives of a state statute requiring evaluation by a psychiatrist prior to parole consideration.  Finally, Vinson challenges the five year set-off date assigned for his next parole consideration as violative of the Ex Post Facto Clause. The defendants in this cause of action are Cynthia Dillard, the Executive Director of the Alabama Board of Pardons and Paroles, and William Wynne and Robert Longshore, members of the Alabama Board of Pardons and Paroles.  Vinson seeks issuance of a declaratory judgment, injunctive relief and monetary damages.

1

The defendants filed special reports and relevant evidentiary materials addressing the plaintiff's claims for relief.  In these filings, the defendants deny Vinson has a liberty interest in parole created by the letter and assert that they acted in accordance with applicable federal and state law during the parole consideration process.  The defendants further maintain that utilization of the five year set-off in determining Vinson's parole consideration date did not run afoul of the Ex Post Facto Clause.  The defendants also maintain that they denied Vinson parole based on his criminal record, the nature and severity of his criminal offenses, his potential for future violence, the community attitude towards him and the testimony from interested parties which led them to conclude that his release would not be compatible with the welfare of society.

Upon receipt of the defendants' special reports, the court issued an order directing Vinson to file a response, including affidavits or statements made under penalty of perjury and other evidentiary materials, to the reports.  *Order of March 11, 2016 - Doc. No. 32* at 2.  That order specifically cautioned Vinson that "the court may at any time [after expiration of the time for his response] and **without further notice to the parties** (1) treat the special report and any evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with law."  *Id.* at 2-3.  Vinson failed to file a response to this order.

Pursuant to the March 11, 2016 order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment.  Thus, this case is now pending on the defendants' motion for summary judgment.  Upon consideration of this motion,

2

the evidentiary materials filed in support thereof, and the sworn complaint, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[1]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has

---

[1]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions."  Fed. R. Civ. P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id.*  "'Shall' is also restored to express the direction to grant summary judgment."  *Id.*  Despite these stylistic changes, the substance of Rule 56

failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact with respect to the claims presented by the plaintiff. Based on the foregoing, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may . . . grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits, [statements made under penalty of perjury,] or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a

---

remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

verdict in its favor.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts
>
> must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [parole] authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).  To proceed beyond the summary judgment stage, an inmate-plaintiff is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Fed. R. Civ. P. 56(e).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-250.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)."  *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990).  Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (A plaintiff's "conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment.");  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing

beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment. . . ."); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value.").  Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (summary judgment appropriate where no genuine dispute of material fact exists).  At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. -- and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk S. Ry. Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant.  *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004).  What is material is determined by the

substantive law applicable to the case.  *Anderson*, 477 U.S. at 248; *Lofton v. Sec'y of the Dep't of Children and Family Servs.*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment.").  "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se*

litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence contained in the record. After such review, the court finds that Vinson has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

### III. IMMUNITY

### A. Official Capacity Claims

Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "

> A state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities."

*Lancaster v. Monroe Cty.*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing and under the facts of this case, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary

damages from them in their official capacities.  *Id.* at 1429; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Individual Capacity Claims

To the extent Vinson seeks monetary damages from the defendants for actions relative to the parole consideration process and/or the denial of parole, he is likewise entitled to no relief.  This Circuit has long recognized that parole board officials are entitled to quasi-judicial immunity from suits requesting damages based upon decisions to grant, deny or revoke parole.  *Fuller v. Georgia State Bd. of Pardons and Parole*, 851 F.2d 1307 (11th Cir. 1988); *Cruz v. Skelton,* 502 F.2d 1101, 1101-02 (5th Cir. 1974).  All of the actions about which Vinson complains arose during proceedings resulting in the denial of parole.   Under these circumstances, the actions of parole officials are inextricably intertwined with their decision-making authority and they are therefore immune from damages.  Consequently, the plaintiff's claim for monetary damages against the defendants in their individual capacities is due to be summarily dismissed.

### IV.  DISCUSSION OF CLAIMS

### A.  Material Facts

Vinson is currently confined in the custody of the Alabama Department of Corrections on a sentence of life imprisonment imposed upon him in 1981 by the Circuit Court of Montgomery County, Alabama, for a first degree rape conviction.  Vinson also has prior convictions for third degree robbery and first degree kidnapping.  The parole decision relevant to this cause of action occurred on March 6, 2013, when defendants

Wynne and Longshore voted to deny Vinson parole.  *Exh. 1 to the Defendants' Special Report (Report of Action by the Board) - Doc. No. 16-1* at 3.  The record demonstrates that the denial of parole occurred because the voting members of the Parole Board did not believe that Vinson constituted an acceptable risk for release on parole. *Exh. 2 to the Special Report (Aff. of Robert Longshore) - Doc. No. 16-2* at 2-3; *Exh. 3 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 16-3* at 2-3 (same).  The board members scheduled Vinson's next parole consideration for March of 2018.  *Exh. 1 to the Special Report (Report of Action by the Board) - Doc. No. 16-1* at 3.

### B.  Due Process Claims

Vinson seeks relief for an alleged lack of due process afforded to him during the parole consideration process which resulted in the denial of parole on March 6, 2013. Specifically, Vinson alleges that the language in a letter provided to him by defendant Dillard upon a previous denial of parole "creat[ed] a liberty interest protected by due process" in being released on parole upon his cooperation with correctional officials. *Amended Compl. – Doc. No. 8* at 2 (This letter expressed the Board's "hope" that Vinson "will cooperate with the prison authorities in order that [he] may receive the best benefits accorded[.]").  Vinson also contends that defendants Wynne and Longshore denied him due process when they failed to obtain a psychiatric evaluation for use in determining his suitability for release on parole as directed by state law.  *Id*. at 3.

The defendants adamantly deny that the letter or state law creates a liberty interest in parole.  In support of this assertion, the defendants argue that:

The language "the Board hopes you will cooperate with the prison authorities in order that you may receive the best benefits that can be accorded" that is in the body of the denial letter that is sent to <u>all</u> prisoners whose parole has been denied [does] not create a protectable right or a liberty interest in parole.  The usage of the word "hopes" in the parole denial letter merely encourages prisoners to cooperate with the prison authorities [so that he "may" potentially receive those benefits available to him while incarcerated], nothing more.  The language in the letter does not set forth conditions precedent to being automatically granted parole.

Alabama parole statutes do not create a "liberty interest" entitled to protection under the due process clause of either the United States or Alabama constitutions.  The right to a parole is a privilege. . . .

. . . .

The Board has "total" discretion to grant or deny parole [under applicable state law, *Ala. Code* § 15-22-26].  The letter does not create a right to parole if the prisoner cooperates with prison officials and does not state that "if you cooperate with prison authorities that you <u>will</u> be paroled" Vinson clearly has no "liberty interest created by the Alabama parole statues or the language contained in the parole denial letter.

*Supplemental Special Report - Doc. No. 31* at 2-4.

The defendants further assert that they complied with state law in reviewing Vinson's psychological and mental health records available to them.  The defendants advise that the applicable statute, *Ala. Code* §15-22-25(a), only requires "the Board to acquire [soon after sentencing] 'information as complete as may be obtainable,' including any existing available report on the prisoner's 'psychiatric condition and history'.  However, the statute does not require the Board to consider a psychiatric evaluation where a report does not exist."  *Special Report - Doc. No. 16* at 9.  In support of this assertion, the defendants cite *Sellers v. Thompson*, 452 So.2d 460 (Ala. 1984) and *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937 (11th Cir. 1987).  In *Sellers*, the Alabama Supreme Court determined that *Ala. Code* § 15-22-25(a) did not

> require a psychiatric evaluation of a prisoner before the Board may act on
> his request for parole. . . .  The statute [merely] requires the Board to obtain
> and file "information as complete as may be obtainable."  This statute also
> provides that when "all such existing available records have been
> assembled," they shall be presented to the Board or [its designee], who
> shall determine whether any further investigation is necessary.  Arguably,
> the statute could be read to authorize the Board, assuming it had the means
> to do so, to cause a psychiatric evaluation to be made, but that does not
> necessitate the conclusion that the Board members have violated the statute
> because they failed to order an evaluation.

452 So.2d at 463; *Ellard*, 824 F.2d at 947 (noting *Sellers* established that "statute does not require Parole Board to order a psychiatric evaluation where one does not exist."). The Alabama Supreme Court is the final authority on matters of state law.  *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 540 (11th Cir. 2015) ("'State courts, not federal courts, should be the final arbiters of state law' in our federalist system.  *Baggett [v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997)]."); *Mosher v. Speedstar Div. of AMCA Int'l, Inc.*, 52 F.3d 913, 917 (11th Cir. 1995) (internal citation omitted) ("[S]tate law is what the state supreme court says it is, and a state supreme court's pronouncements are binding on every state and federal judge.").

In light of the foregoing, Vinson's claim that state law required the Parole Board to obtain a psychiatric evaluation prior to considering him for parole is without merit.  In addition, the only evidence properly before the court establishes that defendants Wynne and Longshore reviewed all requisite records, "which included psychological and mental evaluations," during the parole consideration process.  *Exh. 2 to the Special Report (Aff. of Robert Longshore) - Doc. No. 16-2* at 24; *Exh. 3 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 16-3* at 2.

In response to Vinson's claims challenging the decision to deny parole, defendant Longshore addresses these claims as follows:

> . . . .  [As] a Member of the Alabama Board of Pardons and Paroles[,] . . . I have the discretionary decision-making authority to decide which prisoners to release from prison on parole and when and under what conditions to release them on [parole].  I was one of two Board Members [the other being William Wynne] who took an action to deny Willie Vinson parole on March 6, 2013.
>
> In making my determination, I personally studied Willie Vinson's parole file as a whole, which included psychological and mental evaluations, and conducted an individualized assessment of his suitability for parole when considering him for parole.  I also evaluated his criminal record and social record, the nature and severity of his criminal offenses, his potential for future violence, and took into consideration the community attitude towards him and the testimony and information presented to me by those in attendance at his parole hearing when making my decision to deny him parole.
>
> I was not of the opinion that there was reasonable probability that if Willie Vinson were released on parole that he could live and remain at liberty without violating the law and that his release would be compatible with the welfare of society.  Therefore, I exercised my discretion and denied Willie Vinson parole on March 6, 2013.  I reset Willie Vinson for further parole consideration in March of 2018, a five-year parole review set-off.
>
> I deny violating Willie Vinson's constitutional rights, acting improper[ly], or being malicious or having an evil motive or intent when considering and denying Willie Vinson parole or when making my decision to set him off for further parole consideration in five years.  I merely did not feel that Willie Vinson was a suitable candidate for parole at [that] time.

*Exh. 2 to the Special Report (Aff. of Robert Longshore) - Doc. No. 16-2* at 1-4; *Exh. 3 to the Special Report (Aff. of William Wynne, Jr.) - Doc. No. 16-3* at 1-4 (same).

"The Alabama [parole] statute . . . calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination. It does not contain any language that mandates parole. . . .  When the statute is framed in

13

discretionary terms there is not a liberty interest created. . . .  Alabama parole statutes do not create a liberty interest [in parole]." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  This court's exhaustive review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[2]  The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process. . . .' . . . [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole. *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).  The cursory language contained in the letter of denial regarding a "hope" of compliance with correctional officials so that an inmate "may" position himself to receive available benefits does not create a constitutionally protected interest in parole.

To the extent Vinson contends that applicable statutes and regulations create a protected liberty interest in the procedures related to parole consideration, he is likewise entitled to no relief as this claim is foreclosed by *Slocum.*  In *Slocum*, the Eleventh Circuit

---

[2]Section 15-22-26 of the Alabama Code effective in March of 2013 governed the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but *only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society*.  If the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls and enclosure upon such terms and conditions as the board shall prescribe. . . .

deemed such a "unique theory . . . without merit."  678 F.2d at 942.  The relevant portion

of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in
> parole, particular [statutory parole] provisions . . . create a protectable
> entitlement to parole consideration.   Specifically, petitioner cites the
> requirement . . . that parole consideration "shall be automatic" upon the
> expiration of a set period of confinement and language . . . that the board
> include in the parole file "as complete information as may be practically
> available. . . ."  If these provisions create a protectable expectancy in parole
> consideration, petitioner argues that the consideration must comport with
> due process standards.  Petitioner's unique theory is without merit.  Unless
> there is a liberty interest in parole, the procedures followed in making the
> parole determination are not required to comport with standards of
> fundamental fairness.  *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.),
> *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton
> v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision),
> the court concluded that no liberty interest in parole was created by the
> Florida statutes. The court, therefore, rejected appellant's claim that his due
> process rights were violated when he did not receive an initial parole
> interview within the time required under the parole laws.  The analysis in
> *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and
> Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court
> held that no due process violation could be shown through an allegation
> that the Florida Parole and Probation Commission improperly calculated a
> prisoner's "presumptive parole release date."  Accordingly, in the instant
> case petitioner['s] . . . allegation that the . . . parole board has not accorded
> him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 941-942.

As is clear from the foregoing, Vinson does not possess a liberty interest in being

granted parole that is protected by the Due Process Clause of the Constitution.  *Heard v.*

*Georgia State Bd. of Pardons and Paroles*, 222 F. App'x 838, 840 (11th Cir. 2007);

*Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942;

---

*Ala. Code* § 15-22-26 (emphasis added).  The statute is clear that the decision to grant parole is
within the sole discretion of members of the parole board and that parole is permitted only when board
members, in their opinion, deem an inmate suitable for release on parole.

*Thomas*, 691 F.2d at 488-489.  Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions."). Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process.  *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action."  *Thomas*, 691 F.2d at 489.  Defendants Longshore and Wynne maintain they acted in accordance with the Constitution, federal law, state law and applicable administrative regulations when they denied parole to Vinson.   They also advise that the decision to deny parole was based on their determination that Vinson did not present an acceptable risk for release on parole.[3]  The

---

[3]Alabama law vests complete discretion in the Alabama Board of Pardons and Paroles "of determining what prisoners may be released on parole and when and under what conditions" parole will be granted. *Ala. Code* § 15-22-24(a).  The law further gives the parole board total discretion in determining whether an inmate should be granted parole.  *Ala.Code* § 15-22-26 (A prisoner shall not be released on parole unless "the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society[.]").  The Alabama parole statutes governing standards for parole

decision of the parole board members demonstrates a reasonable and appropriate action, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege.  *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988).  Vinson has therefore failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its members.  Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of Vinson's due process claims.

## C.  Ex Post Facto Claim

Vinson challenges the retroactive application of administrative rules adopted after he began service of his current term of incarceration which altered the potential frequency of setting parole consideration dates from every three years to every five years. *Compl.- Doc. No. 1* at 3.  Vinson argues that use of the amended rules implicates the protections guaranteed by the Ex Post Facto Clause of the United States Constitution.

The Ex Post Facto Clause bars "enactments which, by retroactive operation, increase the punishment for a crime after its commission."  *Garner v. Jones*, 529 U.S. 244, 249 (2000).  An amended law or regulation must create a significant risk of

---

of inmates are typical parole statutes which vest absolute discretion in the Alabama Board of Pardons and Paroles.  *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489.  The Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Board and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts."  *Thomas*, 691 F.2d at 489.  As the findings set forth herein make

increasing the punishment imposed upon an inmate in order for the amendment to run afoul of this constitutional provision. *Garner,* 529 U.S. at 255. Decisions with respect to whether a parole regulation violates the Ex Post Facto Clause when applied to inmates entitled to more frequent parole consideration at the time they committed their crimes must be made on a case-by-case basis. *Harris v. Hammonds*, 217 F.3d 1346, 1350 (11th Cir. 2000). In making these decisions, a court is required to consider evidence of the general operation of the parole system and any other evidence produced by a prisoner in support of his assertion that the regulation "'as applied to his sentence,' created a significant risk of increasing his punishment." *Harris*, 217 F.3d at 1350 (quoting *Garner v. Jones,* 529 U.S. 244, 255 (2000)); *Jones v. Ray*, 279 F.3d 944, 946 -947 (11th Cir. 2001).

In *Garner*, the Court addressed whether an amended Georgia rule increasing parole consideration hearings from every three years to every eight years violated the Ex Post Facto Clause. The Court determined that extending the time for a scheduled parole consideration hearing did not prevent the exercise of discretion by the Georgia Board of Pardons and Paroles during the period between parole reviews, because the agency's policies permit the Board, in its discretion, to schedule expedited reviews in the event of a change in circumstances or new information. *Garner*, 529 U.S. at 256.

A determination of whether retroactive application of a particular change in a law or regulation governing parole respects the prohibition of ex post facto legislation is often

---

clear, there has been no flagrant or unauthorized action by the parole board or its members warranting interference by this court.

a question of particular difficulty when the discretion vested in the parole board is taken into account. *Id.* at 249. In deciding whether a parole regulation prevents a parole board's exercise of discretion, the court may consider the implementing regulations, the statutory structure and the board's representations regarding its operations. *Id.* at 254. "The idea of discretion is that it has the capacity, and the obligation, to change and adapt based on experience." *Id.* at 253.

As previously determined, state law gives the Alabama Board of Pardons and Paroles total discretion in determining whether an inmate should be granted parole, *Ala. Code* § 15-22-26, "and when and under what conditions" parole will be granted, *Ala. Code* § 15-22-24(a). Applicable state law also requires that the parole board consider the public interest in every case. *Ala. Code* § 15-22-26. This unconditional discretion, however, does not displace the protections of the Ex Post Facto Clause. *Garner*, 529 U.S. at 250. The proper inquiry in cases challenging retroactive application of new parole policies or statutes is whether the retroactive change creates "a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id*. (internal quotation marks and citation omitted).

The applicable rules and regulations governing the frequency of parole consideration dates are found in the operating procedures for the Alabama Board of Pardons and Paroles. Article 6, § 11, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*, vests the Board with discretion to "determine whether and when the case shall next be docketed for consideration, not to exceed five (5) years. The case

will be considered again as near as practicable to the specified month and year."[4]   *Exh. 4 to the Special Report - Doc. No. 16-4* at 10.   Article 2, § 7 of these rules provides that, after a denial of parole, "the [Review] Committee may consider earlier scheduling, but such review shall not begin earlier than eighteen (18) months after the Board has denied or revoked parole."[5]   *Id.* at 6.   In addition, the opportunity for an expedited parole review is likewise available to inmates who have served at least five years in prison as Article 2, § 1 of the rules and regulations directs that an inmate in this situation "may request once per calendar year [that parole officials] . . . review the inmate's progress to determine whether it may be appropriate to schedule earlier parole consideration.   Such a rescheduling may be granted only for good cause shown and circumstances bearing on [the inmate's] probability to succeed on parole, not merely because the prisoner is following the rules in prison."   Thus, the rule changes are designed to facilitate better exercise of the Board's discretion.   *Garner*, 529 U.S. at 254-255.

It is clear that the law changing the frequency of parole consideration dates from three years to five years does not extend the term of imprisonment imposed upon Vinson nor increase the level of risk that he will serve a longer term of imprisonment. Specifically, prior to this change, the parole board never guaranteed Vinson that he would

---

[4]The initial operating procedure governing the scheduling of parole consideration dates for inmates, *Ala. Adm. Code* § 640-X-2.02(8)(1982, revised 1986), provided that upon denial of parole to an inmate "the Board will determine when [the inmate's] case is to be reset but in no event shall it be reset for more than three years from the date of denial."   The increase in the reset date from no "more than three years" from denial of parole to the current five-year maximum originally occurred in adoption of the 2001 rules and regulations at Article 6, § 11.   The parole board retained the five-year set off in its later amendments to the operating procedures.

[5]The 2001 amendment to the regulation in Article 2, § 8 initially allowed the "earlier scheduling" of parole consideration twenty-four months, rather than eighteen months, after the denial of parole as permitted by the subsequent amendments.

be unconditionally released before completion of his life sentence.   Additionally, eighteen months after the denial of parole Vinson retains the opportunity under the current regulation to submit information about changed circumstances bearing on his suitability for release on parole and, therefore, he could be scheduled for consideration at an earlier date.   Hence, even if risk of an increased term of incarceration develops in Vinson's case, he may, upon a showing of "good cause . . . and circumstances bearing on his probability to succeed on parole," seek an earlier review before the 5-year reconsideration interval expires.   Article 2, § 1, *Rules, Regulations and Procedures of the Board of Pardons and Paroles*; *Exh.4 to the Special Report - Doc. No. 16-4 at 5.*

Vinson has presented no evidence which demonstrates that the regulations at issue create a significant risk of increased punishment from that imposed for his rape conviction.   Moreover, Vinson possesses the ability to petition the parole board for an earlier parole consideration date.   Based on the foregoing, the court concludes that the change about which Vinson complains did not lengthen his actual term of imprisonment. Thus, Vinson's challenge to the potential two year increase in time between parole consideration dates does not rise to the level of a constitutional violation and provides no basis for relief in this 42 U.S.C. § 1983 action.   *Garner*, 529 U.S. at 253-256; *Olstad v. Collier*, 326 F. App'x 261 (5th Cir. 2009) (Retroactive imposition by parole board of changes in parole policy allowing a potential five year set-off until prisoner's "next parole review presents no ex post facto violation because its effect on increasing [plaintiff's] punishment is merely conjectural. . . .   The [Texas Parole] Board is vested with discretion as to how often to set [plaintiff's] date for reconsideration, with five years

21

for the maximum; the Board is also permitted to adjust subsequent review dates and conduct a special review if [plaintiff's] status changes."); *Creel v. Kyle*, 42 F.3d 955, 957 (5th Cir.), *cert. denied*, 514 U.S. 1070 (1995) (change in rules that lengthen period of time between parole reconsideration hearings applied retroactively by the parole board not violative of the Ex Post Facto Clause).   The defendants are therefore entitled to summary judgment on Vinson's ex post fact challenge to the scheduling of parole consideration dates.

### D.  State Law Claim

To the extent Vinson asserts that the actions of the defendants violated state law, review of this claim is appropriate only upon utilization of this court's supplemental jurisdiction.   In the posture of this case, however, the court finds that exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, 'the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of operative fact." ' "   *L.A. Draper and Son v. Wheelabrator Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984).   The exercise of supplemental jurisdiction is completely discretionary.   *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).   "If the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims."   *L.A. Draper and Son*, 735 F.2d at 428.   In view of this court's resolution of the federal claims presented in the complaint, Vinson's pendent state claim is due to be dismissed.   *Gibbs,* 383 U.S. at 726 (if the federal claims are dismissed prior

to trial, the state claims should be dismissed as well); *see also Ray v. Tennessee Valley Authority*, 677 F.2d 818 (11th Cir. 1982).[6]

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that on or before May 4, 2016 the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th

---

[6]Moreover, an exhaustive review of the complaint, the evidentiary materials filed by the parties and applicable state law fails to indicate any violation of state law by the defendants.

Cir. 1982); 11TH CIR. R. 3-1.  *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir.

1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 20th day of April, 2016.

/s/   Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE